UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-                                    (S1) 19 Cr. 373 (PGG)

MICHAEL AVENATTI,

                    Defendant.

**JURY INSTRUCTIONS**

February 12, 2020

**TABLE OF CONTENTS**

I.  GENERAL INSTRUCTIONS ............................................................................................ 4

   A.  Introduction .......................................................................................................... 4

      1.  Role of the Court ........................................................................................... 4

      2.  Role of the Jury ............................................................................................. 5

      3.  Role of Counsel ............................................................................................. 5

      4.  Sympathy or Bias .......................................................................................... 5

      5.  All Persons Equal Before the Law ................................................................ 7

      6.  Presumption of Innocence; The Government's Burden of Proof; and the Reasonable
         Doubt Standard .............................................................................................. 7

      7.  What Is and Is Not Evidence ......................................................................... 8

      8.  Evidence Received for a Limited Purpose ................................................... 10

      9.  Direct and Circumstantial Evidence ............................................................ 11

      10. Questions by the Court ................................................................................ 12

      11. Summary Chart ............................................................................................ 12

      12. Specific Investigative Techniques .............................................................. 13

      13. Use of Transcripts ....................................................................................... 13

      14. Witness Credibility ...................................................................................... 13

      15. Prior Inconsistent Statements ..................................................................... 15

      16. Witness Bias ................................................................................................ 15

      17. Lawyers and Law Enforcement Witness .................................................... 16

      18. Improper Considerations: Race, Religion, National Origin, Sex, or Age .................. 16

      19. Persons Not on Trial .................................................................................... 17

      20. Uncalled Witnesses ..................................................................................... 17

      21. Defendant's Right Not to Testify ................................................................ 17

      22. Preparation of Witnesses ............................................................................. 18

      23. Variance in Dates ........................................................................................ 18

      24. Stipulations ................................................................................................. 18

II.  INSTRUCTIONS AS TO SPECIFIC CHARGES .................................................. 19

   A.  Significance of the Indictment ........................................................................... 19

B.  Multiple Counts ........................................................................................................ 19

C.  Summary of Charges ................................................................................................. 19

    1.  Count One:  Transmission of Interstate Communications with Intent to Extort ........ 19

    2.  Count Two:  Attempted Extortion ........................................................................ 20

    3.  Count Three:  Honest Services Wire Fraud ......................................................... 20

D.  Transmission of Interstate Communications with Intent to Extort .................................. 21

    1.  Introduction ....................................................................................................... 21

2.  Elements ................................................................................................................ 21

    a.  First Element:  Transmitting a        Communication in Interstate Commerce  21

    b.  Second Element:  Threat to Injure Property or Reputation .................................. 22

    c.  Third Element:  Knowingly and Intentionally ..................................................... 23

    d.  Fourth Element:  Intent to Extort ..................................................................... 23

E.  Attempted Extortion ................................................................................................. 27

1.  Introduction ........................................................................................................... 27

    2.  Proving an Attempt ............................................................................................ 28

3.  Elements ................................................................................................................ 28

    a.  First Element:  Attempt to Obtain Money .......................................................... 29

    b.  Second Element:  Obtaining Money Through Wrongful Use of Fear .................. 29

    c.  Third Element:  Effect on Interstate Commerce ................................................. 30

F.  Honest Services Wire Fraud ...................................................................................... 31

1.  Introduction ........................................................................................................... 31

2.  Honest Services ...................................................................................................... 31

    a.  Duty of Loyalty and Scope of Authority ............................................................ 32

    b.  Duty of Confidentiality ..................................................................................... 34

    c.  Duty of Reasonable Communication .................................................................. 35

    3.  Elements of Honest Services Wire Fraud ............................................................. 36

    a.  First Element:  Scheme or Artifice to Defraud ................................................... 37

    b.  Second Element:  Knowing and Willful Participation ......................................... 39

    c.  Third Element:  Material Misrepresentation ...................................................... 40

    d.  Fourth Element:  Use of Interstate Wires ......................................................... 41

G. Venue ........................................................................................................ 42

III. FINAL INSTRUCTIONS CONCERNING PROCEDURE .................................... 43

A. Right to See Exhibits and Request Testimony; Communications with the Court ........... 43

B. Duty to Deliberate/Unanimous Verdict ...................................................... 43

C. Juror Notes ................................................................................................ 45

D. Verdict ....................................................................................................... 45

E. Duties of Foreperson ................................................................................. 45

F. Return of Verdict ....................................................................................... 46

G. Rules of Conduct ....................................................................................... 46

H. Conclusion ................................................................................................. 46

## I.    <u>GENERAL INSTRUCTIONS</u>

### A.    <u>Introduction</u>

I will now instruct you as to the law that governs this case.  You have been handed a copy of the instructions I will read.  Please read along with me.  You will be able to take your copy of the instructions into the jury room and to consult them during your deliberations.

There are three parts to these instructions.  I'll begin with general instructions about your role, and about how you are to decide the facts of the case, <u>i.e.</u>, what happened.  I will then give you instructions that are specific to the charges in this case.  I will close with instructions about such matters as communications with the Court, conduct during deliberations, and the process for returning a verdict.

It is important that you listen carefully.  I am reading these instructions from a prepared text because the law is made up of words that are very carefully chosen.  This is not a time to <u>ad lib</u>.  When I tell you what the law is, it is critical that I use exactly the right words.

#### 1.    <u>Role of the Court</u>

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any lawyer has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your own notions or opinions of what the law is or what it ought to be.

2. <u>Role of the Jury</u>

As members of the jury, you are the sole and exclusive judges of the facts.  You decide what happened.  It is your sworn duty to determine the facts based solely on the evidence received in this trial.  Any opinion I might have regarding the facts is of absolutely no consequence.

3. <u>Role of Counsel</u>

The personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations at all.

The lawyers and I have had conferences at the bench and other conferences out of your hearing.  These conferences involved procedural or evidentiary matters that are the responsibility of the judge and should not enter into your deliberations at all.

A lawyer has a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible.  It is my responsibility to rule on those objections.  Why an objection was made or how I ruled on it is not your concern.  You should not draw any inference simply from the fact that a lawyer objects to a question, or that I sustained or overruled an objection.

4. <u>Sympathy or Bias</u>

You must evaluate the evidence calmly and objectively, without prejudice or sympathy.  You must be completely fair and impartial.  Your verdict must be based solely on the evidence introduced at this trial, or the lack of evidence.  Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.  Under your oath as jurors you are not to be swayed by sympathy or prejudice.  You are to be guided

solely by the evidence in this case, and the crucial, bottom-line question that you must ask yourselves as you sift through the evidence is: has the Government proven each element of each charge against Mr. Avenatti beyond a reasonable doubt?

It is for you alone to decide whether the Government has proven that the Defendant is guilty of the crimes charged, and you are to do so solely on the basis of the evidence, and subject to the law as I explain it to you. If you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to Mr. Avenatti's guilt as to a particular charge, you should not hesitate for any reason to reach a verdict of not guilty as to that charge. On the other hand, if you should find that the Government has met its burden of proving beyond a reasonable doubt that Mr. Avenatti is guilty of a particular charge, you should not hesitate because of sympathy or any other reason to reach a verdict of guilty as to that charge.

The question of possible punishment must not enter into or influence your deliberations in any way. The duty of imposing a sentence rests exclusively on me. Your function is to weigh the evidence in the case and to determine whether or not the Government has proven Mr. Avenatti's guilt beyond a reasonable doubt, solely on the basis of such evidence or lack of evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed on Mr. Avenatti, if he is convicted, to influence your verdict in any way, or, in any sense, to enter into your deliberations. Similarly, you cannot permit any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in this case.

5.  <u>All Persons Equal Before the Law</u>

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. The fact that the Government is a party and that the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give the Government and its witnesses no less consideration.

In reaching your decision as to whether the Government sustained its burden of proof, you may not consider any personal feelings you may have about the Defendant's race, religion, ethnicity, national origin, sex or age.  All persons are entitled to the same presumption of innocence.

6.  <u>Presumption of Innocence; The Government's Burden<br>of Proof; and the Reasonable Doubt Standard</u>

Mr. Avenatti has pleaded not guilty to all charges.  In doing so, he has denied the charges in the Indictment.  As a result, the Government has the burden of proving the charges against him beyond a reasonable doubt.  This burden of proof never shifts to a defendant, because the law never imposes on a defendant in a criminal case the burden or duty of testifying, of calling any witness, or of locating or producing any evidence.

A defendant does not have to prove his innocence.  To the contrary, Mr. Avenatti is presumed innocent until such time, if ever, that you as a jury are satisfied that the Government has proven him guilty beyond a reasonable doubt.

Mr. Avenatti began the trial with a clean slate, and this presumption of innocence alone is sufficient to acquit Mr. Avenatti unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence. If the Government fails to sustain its burden, you must find Avenatti not guilty.

I will now address reasonable doubt.  What is reasonable doubt?  It is a doubt founded in reason, as opposed to a doubt based on speculation, emotion, sympathy, or prejudice.  It is a doubt that arises out of the evidence, or the lack of evidence.  It is doubt that a reasonable person has after carefully weighing all the evidence.  Reasonable doubt is a doubt that arises from your own judgment, life experience, and common sense when applied to the evidence.

If, after a fair and impartial consideration of all the evidence, you are not satisfied of the guilt of Mr. Avenatti – that is, if you do not have an abiding conviction of his guilt – you must find him not guilty.  In other words, if you have such a doubt as would cause you, as a prudent person, to hesitate before acting in a matter of importance to yourself, then you have a reasonable doubt, and it is your duty to find Mr. Avenatti not guilty.

On the other hand, if after a fair and impartial consideration of all the evidence you do have an abiding conviction of Mr. Avenatti's guilt – in other words, a conviction you would be willing to act upon without hesitation in an important matter in your own life – then you have no reasonable doubt, and it is your duty to find Mr. Avenatti guilty.

Reasonable doubt is not whim or speculation.  It is not an excuse to avoid the performance of an unpleasant duty.  Reasonable doubt also does not mean beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its nature is not susceptible to mathematical certainty.  As a result, the law in a criminal case is that it is sufficient for the Government to establish the guilt of a defendant beyond a reasonable doubt, not beyond all possible doubt.

7.   <u>What Is and Is Not Evidence</u>

In determining the facts, you must rely on your own recollection of the evidence. The evidence in this case is the testimony of the witnesses, the exhibits received in evidence, and the stipulations or agreements as to certain facts entered into by the parties.  When I sustained an

8

objection to a question, the answer that the witness may have given in response to that question is not part of the evidence in this case and may not be considered by you. You are likewise not to consider a lawyer's questions as evidence. It is the witnesses' answers that are evidence, not the questions.

Where I ordered that testimony be stricken from the record, you may not consider that testimony during your deliberations.

The only exhibits that are evidence in this case are those that were received in evidence. Exhibits shown to a witness but not received in evidence are not evidence, nor are materials that were used only to refresh a witness's recollection.

Witnesses sometimes have a failure of recollection when testifying. In such circumstances, it is proper for the lawyer questioning the witness to attempt to refresh his or her recollection. Where a document is used to refresh recollection, that document does not have to have been prepared by the witness, nor does it have to have been made contemporaneously with the events described in it. Where a witness states that a writing has refreshed the witness's memory, then the witness may proceed to testify as to the matters on which his or her memory was refreshed. That testimony is evidence. However, where a witness states that his or her recollection is not refreshed, any statements a lawyer may have made about the document used in the attempt to refresh the witness's recollection are not evidence.

As I told you at the outset of this case, arguments by lawyers are not evidence, because the lawyers are not witnesses. The lawyers have no personal knowledge of what happened here. What they have said to you in their opening statements and in their closing arguments is intended to help you understand the evidence to reach your verdict. However, where your recollection of the evidence differs from what a lawyer has argued, it is your

9

recollection of the evidence that controls. You must determine the facts based solely on the evidence received in this trial. In determining the facts, you must rely on your own recollection of the evidence. What the lawyers said in opening statements, in closing arguments, in objections, or in questions is not evidence.

I remind you also that nothing I have said during the trial, or will say in instructing you on the law, is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

It is for you alone to decide what weight, if any, to give to the testimony of the various witnesses and to the exhibits that have been received in evidence.

### 8. Evidence Received for a Limited Purpose

From time to time during the trial, I told you that certain evidence could be considered only for a limited purpose. Where I gave you such an instruction, you may consider that evidence only for the purpose I identified.

Many exhibits were admitted for purposes of Mr. Avenatti's state of mind. Statements and allegations contained in these exhibits cannot be relied on for their truth, but only to the extent they shed light on Mr. Avenatti's state of mind – what he was thinking or what he understood at the time. I'll give you some examples. This is not an exhaustive list.

During Mr. Auerbach's testimony, I instructed you that GX 312 – Mr. Auerbach's Memorandum of Actions – was admitted only to the extent that it sheds light on Mr. Avenatti's state of mind. GX 312 was not admitted for the truth of any of the allegations contained in the memorandum. Other examples are the text messages between Franklin and Auerbach that were admitted as DX FF-1, FF-1A, and MM-2. These exhibits were admitted to the extent they shed light on Auerbach's and/or Franklin's state of mind, because their state of mind could have affected what they communicated to Avenatti, and thus affected his state of mind.

10

You should be aware that statements, information, thoughts, and desires never communicated to or reviewed by Mr. Avenatti could not have affected his state of mind.

9.    Direct and Circumstantial Evidence

Generally, there are two types of evidence that you may consider in reaching your verdict:  direct evidence and circumstantial evidence.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard.  For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.  Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you're sitting here, someone walks in with an umbrella, which is dripping wet.  Then a few minutes later another person enters with a wet raincoat.  Now, you can't look outside the courtroom to see whether it's raining, so you have no direct evidence of that fact.  But, based on the facts that I have asked you to assume, you could conclude that it had been raining.

That's all there is to circumstantial evidence.  On the basis of reason, life experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.  Many material facts – such as what a person was thinking or intending – are rarely easily proven by direct evidence.  Often such facts are established by circumstantial evidence.

11

Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, whether direct or circumstantial.

There are times when different inferences may be drawn from the evidence. The Government may ask you to draw one set of inferences, while the Defendant asks you to draw another. It is for you, and for you alone, to decide what inferences you will draw from the evidence.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject.

10. Questions by the Court

You should draw no inference or conclusion of any kind – whether favorable or unfavorable – with respect to any witness or party, by reason of any question I posed to a witness. My questions were designed to clarify or expedite matters, and were not intended to suggest any view on my part as to a witness's credibility, or as to what your decision should be. The decision here is for you alone.

11. Summary Chart

A summary chart was admitted at trial. This chart is a visual representation of information or data set forth in documents that were received in evidence. You may consider the summary chart as you weigh the evidence only to the extent that you find that it accurately reflects the exhibits that were received in evidence.

12. <u>Specific Investigative Techniques</u>

There is no legal requirement that the Government prove its case through any particular means. You are not to speculate as to why the Government used the techniques it did, or why it did not use other techniques. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based on the evidence or lack of evidence, the Government has proven Mr. Avenatti's guilt beyond a reasonable doubt.

13. <u>Use of Transcripts</u>

Certain recordings have been admitted into evidence. You were provided with transcripts to assist you in listening to these recordings. As I told you when the recordings were received in evidence, the transcripts of the recordings are not themselves evidence. The transcripts are merely an aid. The evidence is what you hear on the recordings. If you hear something on the recordings that is different from what is set forth in the transcript, it is what you hear on the recordings that controls.

14. <u>Witness Credibility</u>

You should evaluate the credibility of the witnesses by using your common sense. Common sense is your greatest asset as a juror. Ask yourself whether the witness appeared honest, open, candid, and truthful. Did the witness appear evasive, or as though he or she was trying to hide something? How responsive was the witness to the questions asked on cross-examination in comparison to the questions posed on direct examination? You should also consider the witness's ability to recall past events.

If you find that any witness has lied under oath at this trial, you should view the testimony of that witness cautiously and weigh it with great care. It is for you to decide how much of the witness's testimony, if any, you wish to believe, however. A witness may be

inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.

You should also keep in mind that few people recall every detail of every event precisely the same way. It is for you to determine whether inconsistencies in witness accounts are significant or inconsequential.

In sum, it is up to you to decide whether the testimony of a witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

The Government is not required to prove the essential elements of an offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of an offense if you believe that that witness has truthfully and accurately related what he or she has told you. Similarly, the testimony of a single witness may provide the basis for reasonable doubt, if you believe that that witness has testified truthfully and accurately.

15. <u>Prior Inconsistent Statements</u>

The lawyers have argued that, at some earlier time, witnesses said or did something that is inconsistent with their trial testimony.

Evidence of prior statements that a lawyer argues are inconsistent was introduced for the purpose of helping you decide whether to believe a witness's testimony. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness intentionally made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or an insignificant detail; whether the witness had an explanation for the inconsistency; and whether that explanation accords with your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all, part of, or none of the witness's testimony.

16. <u>Witness Bias</u>

In deciding whether to believe a witness, you should consider whether the witness has an interest in the outcome of the case, or is biased in favor of or against one side or the other. You should also consider evidence of any interest or motive that the witness may have in cooperating with one side or the other. It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony. If you find that a witness is biased, you should view his or her testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean he or she has not told the truth. It is for you to decide from your observations, and applying your common sense, life experience, and all the other considerations I have mentioned, whether the possible interest of a witness has – intentionally or otherwise – colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

17. <u>Lawyers and Law Enforcement Witness</u>

You have heard testimony from lawyers and a law enforcement witness. The fact that a witness is a lawyer or is employed by a law enforcement agency does not mean that that witness's testimony deserves more or less consideration, or greater or lesser weight, than that of any other witness. It is up to you to decide, after reviewing all the evidence, what weight to give the testimony of lawyers and the law enforcement witness.

18. <u>Improper Considerations: Race, Religion, National Origin, Sex, or Age</u>

Your verdict must be based solely on the evidence developed at trial or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the Defendant's race, religion, national origin, sex, or age. Similarly, it would be improper for you to consider any personal feelings you may have about the race, religion, national origin, sex, or age of any witness or anyone else involved in this case. Both sides are entitled to a trial free of prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

19. <u>Persons Not on Trial</u>

You may not draw any inference, whether favorable or unfavorable, as to either side from the fact that no person other than Mr. Avenatti is on trial here. You may not speculate as to the reasons why other people are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

20. <u>Uncalled Witnesses</u>

There are people whose names you heard during the trial but who did not appear to testify. You should not speculate as to what those people would have testified to had they been called. Their absence should not affect your judgment in any way. You should keep in mind my instruction, however, that the law does not impose on a defendant the burden or duty of calling any witnesses or producing any evidence. It is the Government's burden to prove beyond a reasonable doubt each element of the crimes charged in the Indictment.

21. <u>Defendant's Right Not to Testify</u>

Mr. Avenatti did not testify in this case. As I told you at the outset of this case, under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant's guilt beyond a reasonable doubt. That burden remains with the Government throughout the trial and never shifts to Mr. Avenatti. A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that Mr. Avenatti did not testify. You may not draw any inference against him because he did not take the witness stand. You may not speculate as to why he did not testify, and you may not consider this against him in any way in your deliberations.

22. <u>Preparation of Witnesses</u>

There has been evidence that witnesses discussed the facts of this case and their testimony with lawyers before they appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, you should be aware that there is nothing unusual or improper about a witness meeting with lawyers before testifying. Indeed, it would be unusual for a lawyer to call a witness to testify without such preparation.

The weight you give to the fact or the nature of the witness's preparation for his or her testimony, and what inferences you draw from such preparation, are matters completely within your discretion.

23. <u>Variance in Dates</u>

The Indictment in this case refers to various dates. It does not matter if the Indictment states that specific conduct is alleged to have occurred on or about a certain date and the evidence indicates that, in fact, it was on another date. The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established through evidence at trial.

24. <u>Stipulations</u>

You have heard evidence in the form of stipulations, or agreements, as to certain facts. Where the parties have entered into an agreement as to certain facts, you must regard the agreed-upon facts as true.

## II.    INSTRUCTIONS AS TO SPECIFIC CHARGES

I will now turn to the charges in this case.

### A.    Significance of the Indictment

The charges against Mr. Avenatti are set forth in an indictment.  An indictment is not evidence of the guilt of a defendant.  It is merely an accusation.  The indictment gives a defendant notice of the charges against him, and it informs the Court and the public of the nature of the accusations.

Given that an indictment is proof of nothing, a defendant begins trial with a clean slate and without any evidence against him.

### B.    Multiple Counts

Here, the Indictment charges Mr. Avenatti with three crimes.  You must consider as to each count of the Indictment whether the Government has demonstrated Mr. Avenatti's guilt beyond a reasonable doubt, and you will be asked to return a separate verdict as to each count.

### C.    Summary of Charges

The three charges against Mr. Avenatti are as follows:

#### 1.    Count One:  Transmission of Interstate Communications with Intent to Extort

Count One charges Mr. Avenatti with transmitting a threat through interstate commerce with intent to extort.  Count One charges that "[o]n or about March 20, 2019, in the Southern District of New York and elsewhere, Michael Avenatti, the defendant, with intent to extort from a corporation money and a thing of value, transmitted in interstate commerce a communication containing a threat to injure the property and reputation of the corporation, to wit, Avenatti, during an interstate telephone call, threatened to cause financial harm to Nike and its reputation if Nike did not agree to make multimillion dollar payments to Avenatti."

19

2.   Count Two:  Attempted Extortion

Count Two charges Mr. Avenatti with attempted extortion.  Count Two charges that "[i]n or about March 2019, in the Southern District of New York and elsewhere, Michael Avenatti, the defendant, attempted to commit extortion . . . and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce . . . to wit, Avenatti used threats of economic and reputational harm in an attempt to obtain multimillion dollar payments from Nike, a multinational public corporation."

3.   Count Three:  Honest Services Wire Fraud

Count Three charges Avenatti with honest services wire fraud.  Count Three charges that "[i]n or about March 2019, in the Southern District of New York and elsewhere, Michael Avenatti, the defendant, having devised and intending to devise a scheme and artifice to defraud, and to deprive [Gary Franklin] of [Franklin]'s intangible right to the honest services of Avenatti, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, Avenatti, owing a duty of honest services to [Franklin], engaged in a scheme to obtain payments for himself from Nike based on confidential information provided to Avenatti by [Franklin] for the purpose of furthering Avenatti's representation of [Franklin], without [Franklin's] knowledge or approval, and used and caused the use of interstate communications to effect the scheme."

I will now instruct you as to the elements of each of the crimes with which Mr. Avenatti is charged.

D.     Transmission of Interstate Communications with Intent to Extort

1.   Introduction

Count One charges Mr. Avenatti with transmission of interstate communications with intent to extort.  The law provides that

> [w]hoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate . . . commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . or any threat to accuse the addressee or any other person of a crime, [is guilty of a crime].

2.   Elements

To find Mr. Avenatti guilty of Count One, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

First:  that Avenatti transmitted the communication charged in Count One in interstate commerce;

Second:  that the communication contained a threat to injure the property or reputation of Nike, Inc.;

Third:  that in doing so Mr. Avenatti acted knowingly and intentionally; and

Fourth:  that in doing so, the Defendant acted wrongfully, with intent to extort money from Nike, Inc.[1]

a.     First Element:  Transmitting a
Communication in Interstate Commerce

The first element of the crime of transmitting a communication with intent to extort is that the Defendant transmitted the communication in interstate commerce.  To establish

---

[1]  Jury Charge, United States v. Balkany, 10 Cr. 441 (DLC); United States v. Jackson, 180 F.3d 55, 65 (2d Cir. 1999) (listing elements and discussing "wrongfulness" requirement), conviction reinstated, 196 F.3d 383 (2d Cir. 1999) (threat to reputation is sufficient where defendant had no plausible claim to the money sought).

21

that Mr. Avenatti transmitted a communication in interstate commerce, the Government must prove that the communication cited in Count One passed between two or more states. The Government is not required to prove that Mr. Avenatti knew that the communication would be transmitted across state borders.[2]

> b.    Second Element:  Threat to Injure Property or Reputation

A communication is a threat to injure property or reputation, and punishable under the law, if it is made under such circumstances that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a "true threat," as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. Thus, to be a crime, the threat on its face and in the circumstances in which it is made must be so unequivocal, unconditional, immediate and specific as to the entity threatened as to convey to an ordinary, reasonable recipient a gravity of purpose and an imminent prospect of execution. The words used by the Defendant should be given their common and ordinary meaning. You may consider both the language and tone the Defendant used and the reaction of the person or persons to whom the communication was addressed. The Government need not prove that the Defendant intended to carry out the threat or that he had the present ability to carry out the threat.[3]

---

[2]  Id.; Sand, et al., Modern Federal Jury Instructions, Instruction 31-9 (addressing whether a threat was transmitted in interstate or foreign commerce in the context of 875(c)).

[3]  Id. (citing United States v. Jordan, 08 Cr. 124 (Oct. 15, 2008) jury charge at 16-17 (citing Francis, 164 F.3d at 123 (approving Kelner's test for true threat for 18 U.S.C. § 875(c)); United States v. Sovie, 122 F.3d 122, 125 (2d Cir. 1997) (same; reasonable recipient test; unnecessary to prove intent or ability to carry out); Malik, 16 F.3d at 51 (approving Kelner); United States v. Kelner, 534 F.2d 1020, 1023, 1027 (2d Cir. 1976) (§ 875(c) charge; specific intent or ability to carry out threat are unnecessary; defining true threat)). See also Sand, et al., Modern Federal Jury Instructions, Instruction 31-8 (defining "threat" in the context of § 875(c):  "A threat is a serious statement expressing an intention to inflict bodily injury (or kill or kidnap) at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to inflict bodily injury (or murder or kidnap). In addition, the

The term "property" includes money and other tangible and intangible things of value.

          c.     <u>Third Element:  Knowingly and Intentionally</u>

To establish that Mr. Avenatti knowingly communicated a threat, the Government must prove that he made a communication containing a threat intentionally, voluntarily, and deliberately, and not because of a mistake or accident, mere negligence, or other innocent reason. A person acts intentionally where he acts deliberately and purposefully, that is, a defendant's acts must have been the product of the defendant's conscious objective rather than the product of a mistake or accident.[4]

          d.     <u>Fourth Element:  Intent to Extort</u>

To act with intent to extort means to act with the intent to obtain money from an entity, with the entity's consent, but where that consent was caused or induced by the wrongful use of fear of harm to the entity's reputation.  Because the crime is transmitting a threat with the intent to extort, the Government need not prove that any payment actually happened, that any payment was promised, or that the victim intended to make a payment.[5]

---

defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.  To determine whether or not the defendant made a threat, you should consider the circumstances under which the statement was made, including its context with respect to surrounding conversation, the language the defendant used, and the reaction of those who heard or read the statement.  It is not necessary that the Government prove that the defendant intended to carry out the threat or that he had the present ability to carry out the threat.  A threat may be conditional upon the defendant's ability to carry it out in the future. The defendant's statement may be a threat even if it was never communicated, nor intended to be communicated, to the target of the threat.").

[4] <u>Id.</u> (citing charge in <u>U.S. v. Dupre</u>, 04 Cr. 267 (Oct. 20, 2004) (defining "knowingly" in context of wire fraud)).

[5] Jury Charge, <u>United States v. Balkany</u>, 10 Cr. 441 (DLC); <u>see</u> <u>also</u> Govt. Proposed Charge (Dkt. No. 95) at 16 (citing "the jury instructions of the Honorable Loretta A. Preska in United States v. Ho, 17 Cr. 779 (LAP) (regarding instruction that payment is not necessary); the jury instructions of the Honorable Vernon S. Broderick in United States v. Ng, 15 Cr. 706 (VSB) (same)").

Not every demand for money, even when coupled with threats to cause harm to an entity's property or reputation, is unlawful. The law makes criminal only those threats to property or reputation that are "wrongful."

An individual's use of threats to harm property or reputation and demands for money are "wrongful" under the law where the threats are used to demand money that the individual does not have a right to receive, has not been authorized by his client to receive, and cannot reasonably believe that he has a right to receive.[6] As you know, Mr. Avenatti was serving as Mr. Franklin's lawyer, and you will have to consider that relationship, as I will explain in a moment.

An individual's threat of harm to property or reputation and demand for money is also "wrongful" under the law where he has a plausible claim of right to the funds, but the Government has shown beyond a reasonable doubt that there is no nexus between the threat of harm to property or reputation and the claim of right. I'll give you an example of what I mean in saying "no nexus." It would be "wrongful" for an employee – as part of an effort to obtain a raise at work – to threaten to publicly expose his supervisor's marital infidelity, because the supervisor's marital infidelity has no nexus to – no connection with – whether the employee is entitled to a raise. The employee might have a plausible claim that he is entitled to a raise, but his demand for a raise would become "wrongful" when linked to a threat to publicly disclose his supervisor's infidelity.[7]

---

[6] Id. (citing Jackson, 180 F.3d at 71 (if the defendant has a plausible claim of right to the funds, the Government must show that there is no nexus between the threat and the claim of right)); Sand, et al., Modern Federal Jury Instructions, Instruction 50-14.

[7] Jackson, 180 F.3d at 69-71; see also United States v. Coss, 677 F.3d 278, 286 (6th Cir. 2012).

By contrast, a country club may threaten to publish a list of its members who are delinquent in paying their dues, even if the members' reputations would be tarnished by the publication.

Here, the Government claims that Mr. Avenatti threatened to harm Nike, Inc.'s reputation if Nike did not agree to make multi-million dollar payments to him for his personal benefit. The Government claims that Mr. Avenatti demanded that Nike hire him and Mark Geragos to perform an internal investigation at Nike, and to agree to pay him and Geragos $15 to $25 million dollars to conduct that internal investigation of Nike. The Government further claims that Mr. Avenatti made these demands to Nike without Mr. Franklin's knowledge or consent, and to Mr. Franklin's detriment. According to the Government, Mr. Avenatti made a financial settlement to Franklin contingent on Nike agreeing to hire him and Geragos to conduct an internal investigation at Nike, for which Avenatti and Geragos would be paid millions of dollars.

Mr. Avenatti contends that he was speaking for Mr. Franklin when he demanded that Nike hire him and Geragos to perform an internal investigation at Nike. According to Avenatti, when he was demanding that Nike hire him and Geragos to perform an internal investigation at Nike, he was pursuing Franklin's objectives. Avenatti also contends that the parties contemplated a written settlement agreement, which would have required Franklin's signature.

In order to conclude that Mr. Avenatti acted "wrongfully," you must find that the Government has proven beyond a reasonable doubt either that (1) in demanding that he be hired and paid to conduct an internal investigation, Avenatti understood that he was acting in furtherance of his own interests, and was not pursuing Franklin's objectives; or (2) Avenatti's

25

threat of harm and demand that he be hired and paid to perform an internal investigation had no

nexus to any claim of Franklin's that Avenatti was authorized by Franklin to pursue.  As you can

see from how these issues are posed, they do not turn on the precise amount of money that Mr.

Avenatti was demanding to perform the internal investigation.

    In determining whether Mr. Avenatti's threat to harm Nike's property or

reputation was "wrongful," you should be aware that it is irrelevant whether the factual

allegations underlying the threat to harm Nike's reputation were true.  In other words, Mr.

Avenatti's threats to harm Nike's property or reputation could be "wrongful" – as I have defined

that term – even if you conclude that Nike employees Carlton Debose and Jamal James directed

Gary Franklin to make improper payments to amateur basketball players, their families, or their

handlers.  Similarly, Mr. Avenatti's threats to harm Nike's reputation could be "wrongful" even

if Nike was engaged in large-scale corruption of amateur basketball.  When a threat is made to

injure the property or reputation of a person or an entity, the truth of the damaging allegations

underlying the threat is not a defense.[8]  Accordingly, you will be asked to determine whether the

Government has proven beyond a reasonable doubt the charges against Mr. Avenatti – not

whether Nike and its employees have committed corrupt acts or other misconduct in connection

with amateur basketball.

    In determining whether Mr. Avenatti's threats to harm Nike's property or

reputation were "wrongful," you should also be aware that Rule 408 of the Federal Rules of

Evidence – which was referenced during trial – does not provide immunity from criminal

---

[8] <u>Balkany</u>, 10 Cr. 441 (DLC) ("It is not a defense that the threats are based on true facts.  In other words, it is irrelevant whether SAC Capital or anyone at SAC Capital actually engaged in insider trading."); <u>Jackson</u>, 180 F.3d at 66 (It is an "established principle that, when a threat is made to injure the reputation of another, the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion under § 875(d).").

prosecution.  Rule 408 provides that conduct or statements made during negotiations to settle or compromise a claim, as well as discussions about offering or accepting a valuable consideration in the course of settling or compromising a claim, may not be used later to prove or disprove the validity or amount of a disputed claim, or to impeach a statement made by a participant in the compromise negotiations.  The purpose of Rule 408 is to encourage settlement of civil claims.

Here, Mr. Avenatti's statements during the meetings with Nike's attorneys are not being offered to prove or disprove the validity or amount of a disputed claim.  Instead, the Government is offering Mr. Avenatti's statements at these meetings as proof that he committed the charged crimes.  Rule 408 does not preclude the Government from offering the statements that Avenatti made during these meetings, nor does Rule 408 provide a defendant with immunity for statements he made during a meeting at which Rule 408 was invoked.

You should also be aware that an alleged victim's failure to object to alleged extortionate demands does not constitute a defense, although the jury may consider an alleged victim's failure to object in determining whether the Government has met its burden of proof.

E.    Attempted Extortion

1.    Introduction

Count Two charges Avenatti with the attempted extortion of Nike.  The law provides that

> [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion or attempts or conspires so to do, . . . [is guilty of a crime].[9]

---

[9] 18 U.S.C. § 1951.

In the context of this case, "attempted extortion" is an attempt to obtain money from Nike, with Nike's consent, but where that consent would be caused or induced by the wrongful use of fear of economic or reputational harm to Nike.[10]

### 2. Proving an Attempt

In order to prove that a defendant attempted to commit a crime, the Government must prove that he (a) intended to commit that crime; and (b) took some action that constitutes a substantial step towards bringing about or accomplishing that crime. Mere intention to commit a crime does not amount to an attempt. Instead, the Government must prove beyond a reasonable doubt that the defendant intended to commit the crime and that he took some action which was a substantial step towards the commission of that crime.[11]

In determining whether a defendant's actions amount to a substantial step towards commission of the crime, it is necessary to distinguish between mere preparation, on the one hand, and an action that constitutes a substantial step towards the commission of the offense on the other. The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an attempt to commit the crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

### 3. Elements

To find Mr. Avenatti guilty of Count Two, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

---

[10] Jury Charge, United States v. Percoco, 16 Cr. 776 (VEC) ("As commonly used, the term "extortion" means coercing someone to give up property as the result of threats of force or violence."); Sand, et al., Modern Federal Jury Instructions, Instruction 50-9 ("Extortion is the obtaining of another person's property or money, with his consent when this consent is induced or brought upon through the use, or threatened use, of force, violence or fear.").

[11] Sand, et al., Modern Federal Jury Instructions, Instruction 10-1, 50-12, 50-13, 50-14; jury charge in Balkany, 10 Cr. 441 (DLC).

First:  that Mr. Avenatti attempted to obtain money from Nike;

Second:  that Mr. Avenatti attempted to obtain money from Nike with its consent, but that Nike's consent would be compelled by the wrongful use of threats designed to induce fear of economic or reputational loss or harm; and

Third:  that as a result of Mr. Avenatti's actions, interstate commerce, or an item moving in interstate commerce, would have been delayed, obstructed, or affected in any way or degree.[12]

### a. First Element:  Attempt to Obtain Money

The first element that the Government must prove beyond a reasonable doubt is that Mr. Avenatti attempted to obtain money from Nike.[13]

### b. Second Element:  Obtaining Money Through Wrongful Use of Fear

The second element that the Government must prove beyond a reasonable doubt is that Mr. Avenatti wrongfully attempted to obtain money from Nike by threats designed to induce fear of economic or reputational loss or harm, whether immediate or in the future.

I instructed you as to the meaning of "threat" and "wrongful" in connection with Count One.  Those instructions begin on page 22 and continue to page 26, and those instructions apply with equal force here.

You must determine whether Mr. Avenatti wrongfully used threats designed to induce fear of economic or reputational loss or harm to unlawfully obtain money from Nike. Such fear exists where Nike representatives experienced anxiety, concern, or worry over Mr.

---

[12]  Sand, et al., Modern Federal Jury Instructions, Instruction 50-10 (laying out elements of Hobbs Act extortion).

[13]  Sand, et al., Modern Federal Jury Instructions, Instruction 50-11.

Avenatti's threats of economic or reputational loss or harm to Nike.  The existence of fear must be determined by the facts existing at the time of Mr. Avenatti's actions.

        c.     <u>Third Element:  Effect on Interstate Commerce</u>

The third element that the Government must prove beyond a reasonable doubt is that the Defendant's actions did or would affect interstate commerce in some way or degree.  In connection with this element, you must determine whether there was an actual or potential effect on commerce between two or more states.

It is not necessary for the Government to prove that commerce actually was affected by the Defendant's conduct, or that the Defendant intended or anticipated that his actions would affect interstate commerce.  It is sufficient if you find that the Defendant's conduct potentially could have affected interstate commerce.  The actual or potential effect on interstate commerce can be minimal.

If you decide that the Defendant's conduct had any effect on interstate commerce, then that is sufficient to satisfy this element.  If you decide that interstate commerce could potentially have been affected if Mr. Avenatti had successfully and fully completed his planned actions, then the element of affecting interstate commerce is satisfied.  However, if you find that – had Mr. Avenatti completed his planned actions, and done all he intended to do – there would have been no effect on interstate commerce, then the Government has not satisfied this element, and you must find Mr. Avenatti not guilty on this count.[14]

---

[14] Sand, et al., Modern Federal Jury Instructions, Instruction 50-15.

F.    Honest Services Wire Fraud

1.    Introduction

Count Three charges Avenatti with honest services wire fraud.  The law provides that

> [w]hoever, having devised or intending to devise any scheme or artifice to
> defraud . . . transmits or causes to be transmitted by means of wire, radio, or
> television communication in interstate . . . commerce, any writings, signs, signals,
> pictures, or sounds for the purpose of executing such scheme or artifice, [is guilty
> of a crime].[15] . . . [T]he term "scheme or artifice to defraud" includes a scheme or
> artifice to deprive another of the intangible right of honest services.[16]

In Count Three, the Government claims that Mr. Avenatti – who, as you know, is a lawyer – was engaged in a scheme to defraud his client, Gary Franklin, of Mr. Franklin's right to Avenatti's honest services.  According to the Government, Mr. Avenatti solicited a bribe from Nike – without Mr. Franklin's knowledge or approval – based on confidential information that Franklin had provided to Avenatti for purposes of Avenatti's representation of Mr. Franklin.

The Government contends that – by seeking secret payments for himself from Nike in exchange for taking certain actions and making certain decisions regarding his representation of Mr. Franklin – Mr. Avenatti breached the fiduciary duties he owed Mr. Franklin while serving as Franklin's lawyer, and committed what is known as honest services wire fraud.

2.    Honest Services

The Government claims that Mr. Avenatti engaged in a scheme to defraud his client, Mr. Franklin, of Franklin's right to Avenatti's honest services.  Because Mr. Avenatti is a member of the California Bar, the duties he owed Mr. Franklin – in his capacity as Mr.

---

[15] 18 U.S.C. § 1343.
[16] 18 U.S.C. § 1346.

31

Franklin's lawyer – are determined by California law.  In order to find Mr. Avenatti guilty of

honest services wire fraud, you would thus need to find that the Government has proven beyond

a reasonable doubt, among other things, that Mr. Avenatti breached one or more duties that a

lawyer owes to a client under California law.  Accordingly, it is necessary that I instruct you as

to the relevant duties – referred to as fiduciary duties – that Mr. Avenatti owed Mr. Franklin

under California law.

       You should keep in mind that proof that Mr. Avenatti violated one or more duties

he owed Mr. Franklin under California law does not mean that he committed honest services

wire fraud.  But the Government must prove beyond a reasonable doubt – as one element of

honest services wire fraud – that Mr. Avenatti violated one or more duties that he owed Mr.

Franklin under California law.

       a.    <u>Duty of Loyalty and Scope of Authority</u>

       Lawyers owe a duty of loyalty to their clients.[17]  This means that, when acting on

behalf of a client, lawyers must put their clients' interests first.

---

[17]  Cal. R. Prof'l Conduct 1.7, Comment 1 ("Loyalty and independent judgment are essential
elements in the lawyer's relationship to a client.  The duty of undivided loyalty to a current client
prohibits undertaking a representation directly adverse to that client without that client's
informed written consent."); Cal. R. Prof'l Conduct 1.7, Comment 4 ("Even where there is no
direct adversity, a conflict of interest requiring informed written consent . . . exists if there is a
significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course
of action for the client will be materially limited as a result of the lawyer's other responsibilities,
interests, or relationships."); <u>Stockton v. Ford</u>, 52 U.S. (11 How.) 232, 247 (1850) ("There are
few of the business relations of life involving a higher trust and confidence than that of attorney
and client, or, generally speaking, one more honorably and faithfully discharged; few more
anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is
the duty of the court to administer them in a corresponding spirit, and to be watchful and
industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of
the rights of the party bestowing it."); <u>Stanley v. State Bar</u>, 50 Cal. 3d 555, 567 (1990) (noting, in
the context of conflicts of interest, that "the duty of loyalty demands an attorney or law firm
provide the client all material information in the attorney or firm's possession"); <u>Mayo v. State
Bar</u>, 23 Cal. 3d 72, 75 (1978) (noting, in the context of knowingly withholding information from
a client, in which the attorney attempted to profit financially on the basis of the withheld

Moreover, a lawyer shall not, without informed written consent from the client, represent a client if there is a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a third party, or by the lawyer's own interests.[18] "Informed consent" means a client's agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably foreseeable adverse consequences of the proposed course of conduct.[19]

A conflict of interest requiring informed written consent exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal.[20]

Under California law, it is the client who defines the objectives of the representation and not the lawyer.[21] A lawyer cannot act without the client's authorization, and a

---

information, that "[i]t is well established that '[t]he relationship of attorney and client by its very nature is one in which the attorney assumes, and owes to his client, the exercise of the highest good faith' . . . and '[t]he relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity . . .'" (quoting Rader v. Thrasher, 57 Cal. 2d 244, 250 (Cal. 1962); Cox v. Delmas, 99 Cal. 104, 123 (Cal. 1893))); Betts v. Allstate Ins. Co., 154 Cal. App. 3d 688, 715-16 (Cal. Ct. App. 1984) ("[I]t is an attorney's duty to 'protect his client in every possible way,' and it is a violation of that duty for the attorney to 'assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.' The attorney is 'precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interest.'" (quoting Anderson v. Eaton, 211 Cal. 113, 116 (Cal. 1930); Klemm v. Superior Court, 75 Cal. App. 3d 893, 901-902 (Cal. Ct. App. 1977))).

[18] Cal. R. Prof'l Conduct 1.7.
[19] Cal. R. Prof'l Conduct 1.0.1(e).
[20] Cal. R. Prof'l Conduct 1.7.
[21] Nehad v. Mukasey, 535 F.3d 962, 970 (9th Cir. 2008) (citing Davis v. State Bar, 33 Cal.3d 231, 188 Cal. Rptr. 441, 655 P.2d 1276, 1279 (1983); see also Model Rules of Prof'l Conduct R. 1.2(a) (2002)).

lawyer may not take over decision-making for a client, unless the client has authorized the lawyer to do so.[22]  A lawyer must abide by a client's decisions concerning the objectives of the representation and shall reasonably consult with the client as to the means by which the objectives are to be pursued.[23]

Subject to requirements of client confidentiality, a lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.  The client has the ultimate authority to determine the purposes to be served by the legal representation, however, within the limits imposed by law and the lawyer's professional obligations.  A lawyer retained to represent a client is authorized to act on behalf of the client, such as in procedural matters and in making certain tactical decisions.  A lawyer is not authorized merely by virtue of the lawyer's retention to impair the client's substantive rights or the client's claim itself.[24]

In the context of settlement, only the client may decide whether to make or accept an offer of settlement.[25]

### b.    Duty of Confidentiality

Lawyers owe a duty of confidentiality to their clients.[26]  The duty includes information that the client wants kept in confidence because it might be embarrassing or otherwise detrimental to the client.  The duty of confidentiality requires a lawyer not to reveal confidential client information unless the client has given "informed consent" to the disclosure,

---

[22] Jarvis v. Jarvis, 244 Cal. Rptr. 3d 722, 738 (Cal. Ct. App. 2019) ("The lawyer's duty of loyalty requires the lawyer to act at a client's direction. A lawyer cannot act without the client's authorization. Nor can the lawyer take over the decision making for a client absent authority to do so.")

[23] Cal. R. Prof'l Conduct 1.2.

[24] Cal. R. Prof'l Conduct 1.2; Cal R. Prof'l Conduct 1.2, Comment 1.

[25] Nehad v. Mukasey, 535 F.3d 962, 970 (9th Cir. 2008) (citing Estate of Falco, 188 Cal.App.3d 1004, 233 Cal. Rptr. 807, 815 (1987) ("A client's right to reject settlement is absolute.")).

[26] Cal. Bus. & Prof. Code § 6068(e)(1) ("It is the duty of an attorney to . . . maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.");

as I have previously defined that term.[27]  A lawyer shall not use a client's confidential

information to the disadvantage of the client unless the client gives informed consent.[28]

c.    <u>Duty of Reasonable Communication</u>

Lawyers are required to keep clients reasonably informed of significant

developments in matters with regard to which the attorney has agreed to provide legal services,

and to respond promptly to reasonable status inquiries of clients.[29]  A lawyer must also

reasonably consult with the client about the means by which the lawyer will try to achieve the

client's goals and objectives; keep the client reasonably informed about significant developments

relating to the representation; and explain a matter to a client to the extent reasonably necessary

to permit the client to make informed decisions during the representation.[30]  "Reasonably" refers

to the conduct of a reasonably prudent and competent lawyer.[31]  A lawyer owes his client a duty

of full and frank disclosure of all relevant information relating to the subject matter of the

representation.[32]

A lawyer shall promptly communicate to the lawyer's client all amounts, terms,

and conditions of any written offer of settlement made to the client.  An oral offer of settlement

made to a client in a civil matter must also be communicated if it is a significant development in

the representation.[33]

---

[27] Cal. R. Prof'l Conduct 1.6.
[28] Cal. R. Prof'l Conduct 1.8.2.
[29] Cal. Bus. & Prof. Code § 6068(m).
[30] Cal. R. Prof'l Conduct 1.4.
[31] Cal. R. Prof'l Conduct 1.0.1(h).
[32] <u>Matter of Yagman</u>, No. 91-O-03890, 1997 WL 817721, at *5 (Cal. Bar Ct. Dec. 31, 1997).
[33] Cal. R. Prof'l Conduct 1.4; Cal. R. Prof'l Conduct 1.4.1; Cal. R. Prof'l Conduct 1.4.1, Comment; <u>Matter of Yagman</u>, 1997 WL 817721, at *5 ("[W]hile a client must be informed of significant developments in the matter, a member will not be disciplined for failing to communicate insignificant or irrelevant information." (Emphasis added.)  Thus, under rule [1.4.1], an attorney has no duty to communicate either a written or oral offer of settlement to his client unless it is a significant offer.  Stated conversely, an attorney has a duty, under rule [1.4.1],

35

3.  Elements of Honest Services Wire Fraud

To find Mr. Avenatti guilty of Count Three, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

First:  that there was a scheme or artifice to defraud Franklin of his right to Mr. Avenatti's honest services through bribery, that is, quid pro quo payments, as I will explain in a moment;

Second:  that Mr. Avenatti knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud Franklin;

Third:  that the scheme or artifice to defraud engaged in by Mr. Avenatti involved a material misrepresentation, omission, false statement, false pretense, or concealment of fact from or to Franklin[34]; and

Fourth:  that in executing the scheme, Mr. Avenatti used, or caused the use by others of, interstate wires.[35]

---

to communicate to his client all significant offers of settlement regardless of whether they are written or oral.").

[34] United States v. Foxworth, 334 F. App'x 363, 366 (2d Cir. 2009) ("A material misrepresentation or omission is an element of honest services wire fraud, and in this context a misrepresentation or omission is 'material' if it 'ha[s] the natural tendency to influence or [is] capable of influencing [the public at large and such relevant decisionmakers as are members of the public to] change [their] behavior.'" (citing Rybicki, 354 F.3d at 147.))

[35]  Sand, et al., Modern Federal Jury Instructions, Instruction 44-3; id. at Comment on 44-3 ("In cases involving 'honest services' fraud under 18 U.S.C. § 1346 the Second Circuit has adopted a different formulation requiring:  (1) a scheme or artifice to defraud; (2) that the scheme was for the purpose of depriving another of the intangible right to honest services; (3) that the misrepresentation or omission was material; and (4) the use of the mails or wires in furtherance of the scheme."); Jury Charge, United States v. Tanner, 17 Cr. 61 (LAP); Jury Charge, United States v. Seabrook, 16 Cr. 467 (ALC); United States v. Rybicki, 354 F.3d 124, 145-46 (2d Cir. 2003) (en banc) (listing elements as:  (1) a scheme or artifice to defraud, (2) that the scheme was for the purpose of depriving another of the intangible right to honest services, (3) that the misrepresentation or omission was material, and (4) the use of the mails or wires in furtherance of the scheme."); see also id. at 126-27 ("[W]e conclude that the statute clearly prohibits a

a.      First Element:  Scheme or Artifice to Defraud

The first element that the Government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud Franklin of his right to Mr. Avenatti's honest services through bribery, that is, quid pro quo payments.  A "scheme or artifice to defraud" is a plan, device, or course of action by Mr. Avenatti to deprive Mr. Franklin of his right to Mr. Avenatti's honest services as a lawyer by means of fraudulent pretenses, representations, suggestions or omissions that were reasonably calculated to deceive a person of ordinary prudence.[36]

The Government claims that Mr. Avenatti had a plan to deprive Mr. Franklin of his right to Mr. Avenatti's honest services as a lawyer that involved Mr. Avenatti soliciting a bribe from Nike, in return for which Mr. Avenatti would take actions involving the settlement of Mr. Franklin's claims that he believed would allow Nike to avoid harm.[37]  In the context of the honest services wire fraud charged here, a bribe is a secret payment that Mr. Avenatti sought from Nike – a payment secret from Mr. Franklin – pursuant to which Mr. Avenatti agreed to take actions regarding the settlement of Mr. Franklin's claims that he believed would allow Nike to avoid harm, thereby breaching the fiduciary duty he owed Franklin.  It is not necessary for the Government to show that the steps that Mr. Avenatti offered to take for Nike, in exchange for the bribe, were detrimental to Mr. Franklin.  If you find that there is such evidence, however, you

---

scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer (or of the person to whom the duty of loyalty is owed) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer.").

[36] Sand, et al., Modern Federal Jury Instructions, Instruction 44-4.

[37] Id.

may consider it in determining whether Mr. Avenatti promised to take actions and make decisions because of a potential payment from Nike.[38]

Accordingly, in order to prove the first element of the honest services wire fraud charge, the Government must show a quid pro quo – a Latin term that means "this for that." The Government must prove beyond a reasonable doubt that Mr. Avenatti solicited a bribe from Nike in the course of his representation of Mr. Franklin, in exchange for which he offered to take actions regarding the settlement of Mr. Franklin's claims that he believed would allow Nike to avoid harm – thereby breaching the fiduciary duty he owed Franklin – and that the honest services that Franklin was thereby deprived of were material.[39]

It matters not whether the defendant actually accepts the bribe or ultimately performs the promised action. The success of the scheme is not an element of the crime.

You should also be aware that even where a lawyer has violated one or more rules of professional conduct, he has not necessarily engaged in a scheme to defraud. Nor is it sufficient for the Government merely to demonstrate that a defendant was engaged in undisclosed self-dealing or that he failed to disclose a conflict of interest. While you may consider such evidence in making your decision, the Government must prove beyond a reasonable doubt that Mr. Avenatti sought the payment from Nike in exchange for offering to allow that payment to influence his actions and decisions as Mr. Franklin's lawyer.[40]

---

[38] See generally id.; Jury Charge, United States v. Tanner, 17 Cr. 61 (LAP); Skilling v. United States, 561 U.S. 358, 408 (2010); Rybicki, 354 F.3d at 139-41 (noting that in private-sector honest services cases, "a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment").

[39] Jury Charge, United States v. Tanner, 17 Cr. 61 (LAP).

[40] Id.

b.    Second Element:  Knowing and Willful Participation

The second element of honest services wire fraud is that the Defendant participated in the scheme to defraud knowingly, willfully, and with specific intent to defraud.

As I instructed you earlier, a person acts "knowingly" when he acts intentionally, voluntarily, and deliberately, and not because of a mistake or accident, mere negligence, or other innocent reason.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law.

"Specific intent to defraud" means to act knowingly and with the specific intent to deceive for the purpose of depriving Mr. Franklin of his right to Mr. Avenatti's honest services.

Whether Mr. Avenatti acted knowingly, willfully, and with intent to defraud presents questions of fact for you to determine.  These questions address his state of mind.

Direct proof of knowledge and intent is rarely available.  These matters are often proven by circumstantial evidence, based upon a person's outward manifestations, his words, conduct, and acts, and all the surrounding circumstances disclosed by the evidence and the reasonable inferences that may be drawn from the evidence.  As I have instructed you, circumstantial evidence is of no less value than direct evidence.

Since an essential element of the honest services wire fraud charge is an intent to defraud, it follows that good faith on the part of Mr. Avenatti is a complete defense to this charge.  Accordingly, if you find that Mr. Avenatti honestly believed that Mr. Franklin had authorized him to demand that Nike hire him and pay him millions of dollars to conduct an internal investigation of Nike, then Mr. Avenatti acted in good faith and he did not have a specific intent to defraud.  Moreover, the Government, and not Mr. Avenatti, bears the burden of

proof on this issue. Mr. Avenatti has no burden to prove his good faith. The burden is instead on the Government to prove beyond a reasonable doubt that Mr. Avenatti acted with fraudulent intent, and did not act in good faith.[41]

        c.      <u>Third Element: Material Misrepresentation</u>

The third element that the Government must prove beyond a reasonable doubt is that the scheme or artifice to defraud in which Mr. Avenatti engaged involved a material misrepresentation, false statement, false pretense, or omission.

A statement or representation is false if it was not true when made. A representation or statement is fraudulent if it was falsely made with the intention to deceive. Deceitful half-truths, the concealment of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent statements under the law.[42] A failure to disclose material information may also constitute a fraudulent representation if the defendant was under a legal or professional duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with the intent to defraud.[43]

The false or fraudulent representation – or failure to disclose – must relate to a material fact or matter. A representation, statement, false pretense, omission, or concealment of fact is "material" if it would naturally tend to lead a reasonable person to change his conduct, or if it is something that a reasonable person might have considered important in making his or her decision.[44]

---

[41] Jury Charge, <u>United States v. Tanner</u>, 17 Cr. 61 (LAP).
[42] Sand, et al., Modern Federal Jury Instructions, Instruction 44-4.
[43] <u>Id.</u> Comment to Instruction 44-4 (citing <u>United States v. Mittelstaedt</u>, 31 F.3d 1208 (2d Cir. 1994)).
[44] <u>Id.</u> Instruction 44-4; Jury Charge, <u>United States v. Tanner</u>, 17 Cr. 61 (LAP).

The deception need not be premised upon spoken or written words alone.  For example, in the context of honest services wire fraud, the deceit may consist of the concealment of a bribe that was solicited by a defendant who owes a fiduciary duty to another.  If there is deception, the manner in which it is accomplished is irrelevant.

It also does not matter whether the intended victim of the scheme to defraud could have discovered the fraud had he probed or investigated.  If you find that a scheme or artifice to defraud existed, it is irrelevant whether the intended victim was careless, gullible, or even negligent.  The intended victim also need not have suffered any loss.[45]

d.    Fourth Element:  Use of Interstate Wires

The fourth and final element that the Government must establish beyond a reasonable doubt is the use of an interstate wire communication in furtherance of the scheme to defraud.

The term "wire facilities" includes telephones, faxes, emails, and wire transfers between banks.  The use of the wire facilities must pass between two or more states as, for example, a telephone call between New York and any other state.

It is not necessary that the defendant directly or personally use any wire facility, as long as such use is reasonably foreseeable to the defendant in executing the alleged scheme to defraud.  It is sufficient that a defendant caused the wires to be used by others, and the defendant need not have specifically authorized others to use a wire facility.  When a defendant commits an act with knowledge that use of the wires will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even though not actually intended, then the defendant has caused the wires to be used.  The wire use requirement is satisfied even where the

---

[45] Jury Charge, United States v. Tanner, 17 Cr. 61 (LAP).

wire use was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud.

Moreover, the use of the wires need not itself be fraudulent. Stated another way, the material wired need not contain any fraudulent representation or even any request for money. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud.

Finally, if you find that a wire communication was reasonably foreseeable and that the interstate wire use charged in the Indictment took place, then this element is satisfied even it if was not foreseeable that the wire communication would cross state lines. If you find that a wire communication was used in furtherance of the scheme to defraud, you must be unanimous as to at least one of the particular interstate wire communications that you conclude were made in furtherance of the scheme to defraud.[46]

G.    Venue

As to each of Counts One through Three, you must also consider the issue of venue – namely, whether any act in furtherance of the alleged unlawful activity occurred within the Southern District of New York. The Southern District of New York includes Manhattan.

It is sufficient to find venue in the Southern District of New York with respect to a particular count if you find that Avenatti committed any act in furtherance of the unlawful activity alleged in that count in this District.

As to venue, and as to venue alone, the Government's burden is not proof beyond a reasonable doubt. Instead, venue may be established by a preponderance of the evidence. A preponderance of the evidence means more likely than not. Thus, the Government has satisfied

---

[46] Jury Charge, United States v. Tanner, 17 Cr. 61 (LAP); Jury Charge, United States v. Seabrook, 16 Cr. 467 (ALC); see also Sand, et al., Modern Federal Jury Instructions, Instruction 44-7.

the venue requirement if you conclude that it is more likely than not that any act in furtherance of the charged unlawful activity took place in the Southern District of New York.  If you find that the Government has not proven venue by a preponderance of the evidence with respect to a particular count, then you must find Mr. Avenatti not guilty of that count.

### III.     FINAL INSTRUCTIONS CONCERNING PROCEDURE

A.     Right to See Exhibits and Request Testimony;
         Communications with the Court

If, during your deliberations, you have any doubt as to any of the testimony, you may request that relevant portions of the trial transcript be sent back to you in the jury room.  If you want any testimony, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of the testimony.

All of the documentary exhibits that have been received in evidence will be sent into the jury room.  If you wish to see and/or hear any of the recordings again, you may request that, and we will play the recordings for you here in the courtroom.

If you want any further explanation of the law as I have explained it to you, you may also request that.  As I noted earlier, however, you may all take into the jury room your copy of these instructions.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the marshals.  Please make any notes as clear and precise as possible.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

B.     Duty to Deliberate/Unanimous Verdict

Your function is to weigh the evidence in this case and to decide whether the Government has proven beyond a reasonable doubt each of the essential elements of the crimes

with which the Defendant is charged.  If the Government has succeeded in meeting its burden, your verdict should be guilty; if it has failed to do so, your verdict should be not guilty.  You must base your verdict solely on the evidence and these instructions as to the law, and you are obligated under your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room and no one juror should control or monopolize the deliberations.

Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy or to prejudice or favor for either side.

Your verdict as to each charge and each issue must be unanimous.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

Remember at all times, you are not partisans.  You are judges – judges of the facts.  Your sole interest is to determine whether the Government has proven the Defendant's guilt beyond a reasonable doubt.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

C.    <u>Juror Notes</u>

If you have taken notes during the trial, your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  Any notes that you may take are not evidence.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations.

D.    <u>Verdict</u>

I have prepared a verdict form for you to use in recording your decision.  Please use that form to report your verdict.

E.    <u>Duties of Foreperson</u>

I referred a moment ago to a foreperson.  It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here.  The foreperson doesn't have any more power or authority than any other juror, and the foreperson's vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  The foreperson will send out any notes, and when the jury has reached a verdict, the foreperson will notify the marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

45

F.    Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

G.    Rules of Conduct

During your deliberations, all the rules of conduct concerning outside influences remain in effect.  As I have instructed you many times, your verdict must be based solely on the evidence presented in this courtroom.  Accordingly, you are still not permitted to discuss this case with anyone but your fellow jurors, and you may not read anything in the newspapers, over the Internet, or anyplace else about this case.  Also do not listen to or watch any reporting about this case if it should be broadcast on TV, over the radio, or over some other media.

H.    Conclusion

Members of the jury, that concludes my instructions to you.  I ask you to remain seated while I confer with the lawyers to see whether there are any additional instructions that they wish me to give.